Case 20.                    Bates *vs.* Culver.

ORD. PET.                    APPEAL FROM GREENUP CIRCUIT.

1. The laws of Kentucky (*Revised Statutes, p.* 376,) provide for foreign guardians receiving the personal estate of his ward residing in another state.

2. A testator in Ohio made his will, appointed two executors, and gave them also the guardianship of his only son, directing the disposition of his estate principally for the benefit of his son. A guardian in Ohio was appointed and placed under suitable bond where the son resided. A copy of the will was presented in Greenup county, Kentucky, and no person appearing to qualify under it, the sheriff was directed *to take charge of* the personal estate. The guardian from Ohio sued for the fund in the hands of the sheriff. Held that he was entitled to it upon giving bond to use it according to the trust specified in the will, subject to the debts, if any, due in Kentucky.

3. The primary object of the statute in placing estates in the hands of officers, when no person appears to qualify and administer, is to place it in the hands of one who will be bound to discharge the duties of a personal representative. It does not intend to vest a sheriff with the discretionary powers conferred by a will. (*Brown vs. Hobson*, 3 *A. K. Marshall*, 380.) A court of equity may control his action in cases of trust duty.

4. Though a suit may be in form a suit at law, yet if the parties tried as a case in equity, and it be decided as an equity case, and it be a proper case for equity jurisdiction, and there be no objection, this court will so consider and decide it.

[The facts of the case are stated in the opinion of the court.—REP.]

*Hazlerigg* and *B. & J. Monroe* for appellant—

This is rather a novel case, arising under the provisions of the Revised Statutes. By the 16th section of the act concerning guardians, a foreign guardian may obtain the authority of a county court in Kentucky, to sue for, recover and remove the effects of his wards to another state. (See *Revised Statutes, p.* 376.)

The provisions of the statute have been complied with by the appellant, Bates, and the authority to sue for and receive what belongs to his ward has

been conferred by the county court. This decision, we insist, is final between the parties until reversed.

The question arises, had the circuit court the right, when the foreign guardian came into court armed with the authority of the county court, to sue for, recover and remove the funds belonging to his ward to the state of Ohio, where the ward was domiciled, and where the guardian had given bond to do his duty, to give to the funds of the ward a different direction, when there was no person authorized or asking such a thing of the court? We do not perceive the ground for such action.

It is said that the testator appointed executors—this appears of record—but they have neglected to qualify. Before the will was found, and after the proper lapse of time, an administrator was appointed who yet holds the estate. After the will was found and proved, the sheriff was appointed to administer the estate. He has declined to act, denying the authority of the court to appoint him as sheriff. And the fund is yet in the hands of Culver, the administrator.

It is not denied that the chancellor has a large jurisdiction in the protection of the rights of infants, but it will always require cases to be presented in some tangible form, so that justice may be done.

There is not in this case any petition from any quarter asking the case to be disposed of, as was done by the court, and it is not perceived how the interest of the infant will be better protected than if it were placed in the hands of the guardian, Bates. It apears that he has given ample security for the due performance of his duty as guardian, and the duties which devolve upon him as guardian are not other and different from what would be his duty as trustee in place of the executors who refused to qualify. It does not appear that there are any debts yet to pay. If there be any, it is the duty of the administrator to hold back and pay them.

We insist that the circuit court should have directed the administrator to pay over the money of the estate of Hogg to the guardian, Bates ; and, further, to have settled the account with the Pattersons, the partners in the furnace, and given to the guardian a proper control over that interest.

Culver had no right to demand any bond. It was enough for him to have the judgment of the court that he pay over the fund. It does not appear that there are any debts—no suggestion of the kind—and if there should any appear, the funds could be reached in the hands of the guardian in a proceeding against the devisee.

The residuary devisee was a proper party, perhaps a necessary party.

*E. F. Dulin* for appellee—

William Hogg died in 1848 ; his will was not properly admitted to record until the May term of the Greenup circuit court, 1853 ; John Culver had, before any will was found, been appointed administrator ; he settled up the estate, not knowing there was a will. The will seems to have been published before Hogg came to Kentucky, where he acquired lands and other property, after the making of his will, which did not pass by his will. (See *Warner's ex'r vs. Swearingen,* 6 *Dana,* 195.) Kentucky was the proper place to record the will ; he was a citizen of Kentucky. (See 2 *Statute Laws,* 154 ; *Revised Statutes,* 698.)

2. What are the provisions of the will in regard to the property and its custody, &c. It is clear that Charles Hogg, the ward of Bates, has only a contingent interest, after his support and education, depending upon his arriving at the age of twenty-one years. Two executors are appointed, who are to manage the estate. It is intended they shall do this duty as executors, not as guardians, until Charles Hogg shall arrive at twenty-one years of age.

If the executors appointed by the will had qualified, and Bates had been appointed guardian, he could not have coerced the funds out of the hands of the executors; at least to any greater amount than for the support and education of his ward. The case is not changed by their refusal to qualify. And as the administrator, with the will annexed, has qualified, or the sheriff, as a public officer, has taken the custody of it, it is subject to the same rule, and the sheriff is administrator with the will annexed, in fact and in law, clothed with all the rights and subject to all the duties and responsibilities of the executors, whether it be tested by the former or the Revised Statutes, but it is supposed the latter governs. (*Jackson vs. Jeffries*, 1 *Marshall*, 89; *Williams vs. Collins*, 1. *B. Monroe*, 60.) When the will was proved Culver, the administrator, had no further power. When the sheriff was appointed to take charge of the estate, he refused to give any refunding bond.

3. The proper parties were not made by petitioner, and therefore the dismissal of the petition was proper. Charles Hogg is still a minor, and the guardian had no right to any more of the estate than was necessary to support and educate the ward.

Chief Justice MARSHALL delivered the opinion of the court:

June 26.

It is to be assumed in this case, that as early as November, 1852, the plaintiff, William S. Bates, was properly appointed guardian of Charles Hogg, by the probate court of Jefferson county, in the state of Ohio, and that he there entered into bond, with satisfactory sureties, in the penalty of $40,000 for the proper discharge of his duties, and for the safety and proper management of the estate of his ward which should come to his hands. In December, 1852, Bates, as guardian, filed his petition in the county court of Greenup county in this state, asking to be authorized to recover, receive, and remove to Ohio, the personal estate, &c., of Charles Hogg; and af-

ter proceedings conformable to the statutory directions, (*Revised Statutes,* p. 376,) an order of that court, made in February, 1853, authorized him to sue for, recover and remove said personal estate, and to act in other respects as a guardian appointed in this state.

It appears that William Hogg, the father of the ward, Charles Hogg, died in 1848, possessed of considerable estate in Greenup county; and that being supposed to have died intestate, administration of his estate was granted to John Culver, who, by a settlement made in March, 1854, appears to have had in his hands, after all allowances, between six and seven thousand dollars of assets, against which it does not appear that there is any outstanding debt of the decedent.

At the May term, 1853, of the Greenup county court, the will of William Hogg was proved and admitted to record ; and the order states that the executors therein named refusing to qualify, and no person applying for administration with the will annexed, the estate was committed to the hands of the sheriff, who was directed to take possession of it, &c.

1. The laws of Kentucky (*Revised Statutes, p.* 376,) provide for foreign guardians receiving the personal estate of his ward residing in another state.

In July, 1854, the estate still being in the hands of Culver, Bates commenced this action against him for its recovery. Culver answered, stating the facts above mentioned with respect to the administration, and the will, and admitting the balance in his hands, which he says he will pay as directed. He suggests, however, that he is bound to pay it to the sheriff, Marshall Baker, who he says refuses to receive the fund, although, as he alledges, he offered to pay it to him. He makes Baker a defendant. Baker answers that his appointment as administrator with the will annexed was without his consent, and, as he believes, unauthorized by law, and he prays to be dismissed.

2. A testator in Ohio made his will, appoint-

The will of William Hogg, the father, made in 1842, appoints the two persons who were named as executors, to be also the guardians of his son. But

one of them, in his deposition, disclaims all authority or action under the will, and the other, in answer to the petition in the county court, asserts no right of guardianship in himself, but opposes the right claimed by Bates, on the ground that Charles Hogg was a resident of Kentucky, and not of Ohio. The testator also directs particular dispositions of certain portions of his estate, principally for the benefit of his son, by which duties would be devolved on the executors in addition to the mere collection and paying out of his assets, or accounting for them. And in this respect it may be regarded as making them, in the character of executors, trustees, and as intending to place his estate in their hands in trust for the beneficiaries, of whom, with a very slight exception, his son was the principal one; and, unless he should die before attaining twenty-one years of age, he is to have the whole, except $200, and its interest, specifically appropriated to another. But should he die under twenty-one, the whole is to be divided between two nephews and a niece. The trust was renounced, with the executorship and guardianship. The son, in 1852, was fourteen years of age, when a person presumably of suitable character was appointed his guardian, and as such placed under heavy bonds in the state of Ohio, where the boy had resided among his relations, not only from the time of his father's death in 1848, but probably from the time of his own birth, as it appears that his father brought him to Kentucky only a few times and temporarily.

By the final judgment, Culver was directed to pay to the sheriff the balance appearing against him on the settlement before referred to, and as he had offered to pay it to the sheriff, and no refunding bond had been tendered, he was to be charged with such interest only on that balance as he had made after the settlement. The sheriff was directed to pay annually what might be required for the support and education of Charles Hogg, which he was allowed

ed two executors, and gave them also the guardianship of his only son, directing the disposition of his estate principally for the benefit of his son. A guardian in Ohio was appointed and placed under suitable bond where the son resided. A copy of the will was presented in Greenup county, Kentucky, and no person appearing to qualify under it, the sheriff was directed to take charge of the personal estate. The guardian from Ohio sued for the fund in the hands of the sheriff. Held that he was entitled to it upon giving bond to use it according to the trust specified in the will, subject to the debts, if any, due in Kentucky.

to pay to Bates as guardian; and the sheriff was required to give security for paying over the interest, and to report at the next term his acts under the judgment. The result is that the plaintiff's claim to the management of the fund, though not contested by any party, and though apparently consistent with and conducive to the interest of the infant ward, is denied, while, without the agency of any party, the unwilling sheriff, whose appointment by the county court as a *dernier* resort is no peculiar recommendation, is charged with a burthen which he endeavors to reject, and is forced to accept a trust which could be discharged more advantageously to the ward, and perhaps more safely, by the guardian appointed for the purpose of managing his estate. It seems to us that unless there be some consideration strongly opposing it, there is a manifest propriety in placing the estate in the hands of this guardian, where it will be more accessible to the wants of the infant, while it is also under the safeguard of his guardian's bond, and under the supervision of the relatives and friends of the ward. It is in this view that the statute has provided a mode by which a foreign guardian may be authorized to recover, and withdraw from this state, the property of his non-resident ward, with safety to him and without injury to others.

There being in this case no creditors to provide for, no contesting claimant of the fund in question, and no interest opposed to that of the infant, or to the claim of his guardian, unless it be that of the contingent devisees in remainder, whose uncertain interest may, if necessary, be secured, there seems to be no significant obstacle to at least a conditional judgment in favor of the plaintiff, unless it be in the order of the county court directing the sheriff to take the estate into his possession, &c. But even if the sheriff had taken possession of the estate as directed by the order, we are not prepared to concede that an order, of which the grants and requisitions are of the simplest kind, and relate to the most ordinary duties

of administration, would by its own force, or by operation of the statute which authorized it, (*Statute Law*, 671, and *Revised Statutes, title Executors and Administrators, sections* 13, 17 *and* 18, *p.* 333,) either divest the chancellor of his jurisdiction over the trusts created by the will, however extensive and complicated, and vest it in the county court, or to restrict him in the choice of the agents for executing them to the county officer on whom the ordinary duties of administration are devolved from necessity, and whose important local duties preclude his proper discharge of trusts complicated and diversified in their nature, and to be performed in other states. And although the chancellor might assist the sheriff claiming under such an order, in his endeavor to recover the estate from a previous fiduciary displaced from his office, we do not admit that when the sheriff has not acted under the order, but seeks to evade the trusts and avoid its responsibility, it is the province or duty of the chancellor to enforce obedience to the order of the county court, or that even if that order *ipso facto*, and by operation of law, vests the legal title in the sheriff, the chancellor may not, and should not, when it is agreeable to the principles of equity, regard the trusts and trust powers as derelict by refusal or neglect of the trustee, and cause them to be executed by his own proper instruments, and under such directions and restrictions as equity may require.

This will requires the appropriation of money to the purchase of a certain quantity of wild land, to be located at the discretion of the executors, and as was obviously intended, in some of the western states or territories. It directs the interest on $200 to be annually appropriated to the schooling of a designated female, and the principal to be paid to her when of full age. This duty was to be performed where the female was, and as may be assumed in the state of Ohio. The money arising from the residue of his estate, the testator directs to be put to in-

terest on mortgage of real estate, and the interest to be applied "to the education, and schooling, and raising," of his son Charles, who, when he comes of age, is to have full possession. This appropriation of the interest requires and implies a discretion vested in the individuals who are at once executors and guardians. It was also to be made where the son should be, and as the will was made in Ohio, where at its date the father and son resided, and where the son still resides, the implication is that this duty was intended to be there performed, as in fact it now must be. And as already said, there is an evident propriety in placing the money in the same vicinity, and in the same jurisdiction, in which the proceeds are to be appropriated, and in which the beneficiary who may be expected to be entitled not only to the interest, but ultimately to the principal fund, actually resides. It is not a forced inference to say that all this was probably contemplated and intended by the testator; and it may be assumed that his intention in behalf of his son will be more certainly promoted by placing the fund in the hands of the guardian residing near him, and appointed with a special view to his interests, than by either forcing or leaving it in the hands of the sheriff, living at a distance, appointed with no special view to his interest, and whose local duties preclude any special attention to them.

The primary object of the statute was to point out some responsible person, who in the absence of any proper applications, should be officially bound to discharge the necessary duties of a personal representative of the deceased. And although its language may allow a broader interpretation, we think there is nothing to prevent the exercise of the ordinary powers of a court of equity in such a case as this. The statute does not intend to vest in the sheriff the discretionary powers given by the will, as was decided under the act of 1810, in the case of *Brown vs. Hobson*, 3 *A. K. Marshall*, 380. And with regard to

the performance of the other powers and duties above specified, considerations of convenience and propriety concur with the probable intention of the testator in indicating a preference of the foreign guardian over the local sheriff. And as the presentation of a proper person to perform these duties accomplishes, as to them, the objects of the statute, and removes the necessity for the sheriff's doing anything beyond the ordinary calls of administration, it seems to us that the court of equity, without any violation of the statute, may, and according to its general principles and practice should, in the present case place the funds in the hands of the foreign guardian, taking care to protect any domestic or other opposing interests which may be affected thereby.

The plaintiff, it is true, did not in his petition appeal directly to the equity side of the court, but the case, as presented by the pleadings, is one properly of equitable cognizance, and it seems to have been so treated and acted on by the court. And no objection having been made to the form or sort of proceeding, the judgment is to be tested by the principles and powers of a court of equity. In this view, we think, the plaintiff has a right to the fund in Culver's hands, upon securing the contingent interest of the ultimate devisees who may be entitled on the death of Charles Hogg under twenty-one years of age; and upon securing, also, the appropriation of money to the purchase of land, and to the benefit of the female before referred to, as prescribed by the will; all of which will be sufficiently secured by a general bond or covenant, with satisfactory surety, for the performance of the duties above indicated, and by paying over the fund according to the provisions of the will above referred to, and to hold it subject to all just claims upon it.

Wherefore the judgment is reversed, and the cause remanded for a judgment to be rendered in favor of the plaintiff on his entering into the bond or cove-

BATES
*vs.*
CULVER.

not intend to vest a sheriff with the discretionary powers conferred by a will. (*Brown vs. Hobson*, 3 *A. K. Marshall*, 380.) A court of equity may control his action in cases of trust duty.

4. Though a suit may be in form a suit at law, yet if the parties tried as a case in equity, and it be decided as an equity case, and it be a proper case for equity jurisdiction, and there be no objection, this court will so consider and decide it.

nant as above, and for such procedings as may be necessary for the ascertainment and recovery of the funds in Culver's hands.